# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALAN D. LEES<br>and ROMELA J. LEES,<br>　　Plaintiffs,<br><br>　　v.<br><br>ALLSTATE INSURANCE CO.,<br>　　Defendant. | No. 3:15-cv-1050 (VAB) |

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Alan and Romela Lees ("The Leeses" or "Plaintiffs") sued Allstate Insurance Co. ("Allstate" or "Defendant") after Allstate denied coverage for crumbling concrete in the Leeses' finished basement, claiming breach of contract, breach of the covenant of good faith and fair dealing, and unfair and deceptive practices.

Allstate moves for summary judgment, arguing that the insurance policy at issue unambiguously covers only sudden and accidental collapses—not, according to Allstate, the gradual deterioration damaging the Leeses' basement. Allstate argues that it properly denied coverage and did not breach its contract. Allstate also argues that it cannot have breached the covenant of good faith and fair dealing or engaged in unfair and deceptive practices because it did not breach its contract with the Leeses, and even if the Court concludes that Allstate did breach its contract, it did not do so with malicious intent.

For the reasons discussed below, Allstate's motion for summary judgment is **GRANTED**.

I.      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On August 6, 2014, Alan and Romela Lees purchased a house, believing it had only minor defects. Compl. ¶ 4. Before buying the house, they worked with an inspector, who spotted cracks in the basement walls but recommended only that the Leeses fill the cracks to prevent water leaks, and monitor them. Stmt. Material Facts ("SMF") at 7, ECF No. 45. The Leeses also purchased an annually renewing homeowner's insurance policy from Allstate. *Id.* at 2.

The insurance policy covers "sudden and accidental direct physical loss to property . . . except as limited or excluded in this policy." Compl., Ex. A at 8, ECF 1-1. Exclusions include:

> Earth movement of any type, including, but not limited to earthquake, volcanic eruption, lava flow, landslide, subsidence, mudflow, pressure, sinkhole, erosion, or the sinking, rising, shifting, creeping, expanding, bulging, cracking, settling or contracting of the earth. This exclusion applies whether or not the earth movement is combined with water.

*Id.* The policy does cover "sudden and accidental direct loss caused by fire, explosion, theft or breakage of glass or safety glazing materials resulting from earth movement." *Id.* But it does not cover loss resulting from:

> a) wear and tear, aging, marring, scratching, deterioration, inherent vice, or latent defect;
> b) mechanical breakdown;
> c) growth of trees, shrubs, plants or lawns whether or not such growth is above or below the surface of the ground;
> d) rust or other corrosion, mold, wet or dry rot;
> e) contamination, including, but not limited to the presence of toxic, noxious or hazardous gasses, chemicals, liquids, solids or other substances at the residence premises or in the air, land or water serving the residence premises;
> f) smog, smoke from the manufacturing of any controlled substance, agricultural smudging and industrial operations;
> g) settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings;
> h) insects, rodents, birds or domestic animals. We do cover the breakage of glass or safety glazing materials caused by birds; or
> i) seizure by government authority.

*Id.* at 9-10.

The "Collapse" provision of the policy covers "(a) the entire collapse of a covered building structure; (b) the entire collapse of part of a covered building structure; and (c) direct physical loss to covered property caused by (a) or (b) above." *Id.* at 17. The collapse "must be a sudden and accidental direct physical loss" and must be caused by:

> a) a loss [Allstate] cover[s] under Section I, Coverage C—Personal Property Protection;
> b) hidden decay of the building structure;
> c) hidden damage to the building structure caused by insects or vermin;
> d) weight of persons, animals, equipment or contents;
> e) weight of rain or snow which collects on a roof;
> f) defective methods or materials used in construction, repair, remodeling or renovation.

*Id.* Finally, "[c]ollapse does not include settling, cracking, shrinking, bulging or expansion." *Id.*

About two months after moving in, the Leeses discovered a water leak in their basement. SMF at 2; Compl. ¶ 2. They called a contractor to repair the problem, and he told them that he suspected that they "had the J.J. Mottes concrete problem." SMF at 2. In December 2014, an engineer identified "pattern cracking," a problem showing up in houses built in the 1980s and early 1990s with concrete from the J.J. Mottes Concrete Company. Compl. ¶¶ 8-9. Evidently, the crushed stone in the concrete rusts and expands, which eventually reduces the concrete to rubble. *Id.* ¶¶ 10-11. The Leeses allege that, at some point before November 2014, "the basement walls suffered a substantial impairment to their structural integrity," and predict that eventually the basement walls will "fall in due to the exterior pressure from the surrounding soil." *Id.* ¶ 12.

The Leeses told Allstate about the damage to their basement walls on June 26, 2015. SMF at 3. Allstate investigated the claim and, on July 6, 2015, denied coverage for the "long

term cracking" of the foundation walls. Compl., Ex. B at 2, ECF No. 1-2. Allstate cited the following language from the policy to explain its decision:

> Losses We Do Not Cover . . . 5. Earth movement of any type, including, but not limited to earthquake, volcanic eruption, lava flow, landslide, subsidence, mudflow, pressure, sinkhole, erosion, or the sinking, rising, shifting, creeping, expanding, bulging, cracking, settling or contracting of the earth. This exclusion applies whether or not the earth movement is combined with water.
> We do cover sudden and accidental direct physical loss caused by fire, explosion, theft or breakage of glass or safety glazing materials resulting from earth movement.
>
> 15. a) wear and tear, aging, marring, scratching, deterioration, inherent vice, or latent defect;
> b) mechanical breakdown;
> c) growth of trees, shrubs, plants or lawns whether or not such growth is above or below the surface of the ground;
> d) rust or other corrosion, mold, wet or dry rot;
> e) contamination, including, but not limited to the presence of toxic, noxious or hazardous gasses, chemicals, liquids, solids or other substances at the residence premises or in the air, land or water serving the residence premises;
> f) smog, smoke from the manufacturing of any controlled substance, agricultural smudging and industrial operations;
> g) settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings;
> h) insects, rodents, birds or domestic animals. We do cover the breakage of glass or safety glazing materials caused by birds; or
> i) seizure by government authority.

*Id.* at 2-3; Compl., Ex. B, ECF No. 1-2.

After Allstate denied the claim, two expert engineering witnesses looked at the property: David Grandpré for the Leeses and Leonard Morse-Fortier for Allstate. SMF at 6. Both experts agree that long-term deterioration caused the cracking conditions. *Id.* Mr. Grandpré, however, concludes that the long-term deterioration was the result of a series of acute, sudden events causing cracking in the concrete over time. *Id.* Mr. Morse-Fortier determines that the cracking was not a sudden event. *Id.* The experts found no imminent danger of the walls caving. *Id.* at 6-7.

4

The Leeses sued Allstate for breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II), and unfair and deceptive practices in violation of the Connecticut Unfair Insurance Practice Act (CUIPA) and the Connecticut Unfair Trade Practices Act (CUTPA) (Count III). Compl. at 2-9.

Allstate now moves for summary judgment, arguing that "losses for both cracking of walls and faulty or defective construction materials are specifically excluded under the Allstate Policies," and "the 'collapse' exception to the Policy exclusions does not apply because there was no 'sudden and accidental' 'entire collapse' during the Allstate policy period." Mot. Summ. J. at 1, ECF No. 39. Allstate argues that the loss was "cracking caused by expansion of reactive materials in the concrete aggregate," not a collapse. *Id.* Allstate also argues that the damage to the walls occurred gradually over more than thirty years, and was not a sudden event. *Id.* at 2. Allstate seeks summary judgment on Counts II and III if the Court grants summary judgment on Count I because "whenever an insurer is found to have no obligation to pay under an insurance policy, it cannot be liable for bad faith or violation of CUTPA and CUIPA." *Id.*

Allstate also seeks summary judgment on Counts II and III independent of the Court's decision on Count I. *Id.* Allstate argues first that the Leeses have not "offered any evidence to support their claim that Allstate denied their claim as part of an improper business practice of wrongfully denying claims for similar losses." *Id.* Second, Allstate asserts that here, there is "at minimum a good faith dispute as to coverage," meaning that "there can be no liability under CUIPA for alleged wrongful denials of coverage." *Id.* at 3. Allstate contends that the Leeses have failed to establish Allstate's bad faith or a pattern of unfair business practices, and therefore summary judgment must be granted in Allstate's favor on Counts II and III.

## II. STANDARD OF REVIEW

The Court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48.

The Court must view any inferences drawn from the facts in the light most favorable to the party opposing the summary judgment motion. *Dufort v. City of New York*, 874 F.3d 338, 343 (2d Cir. 2017). The Court will not draw an inference of a genuine dispute of material fact from conclusory allegations or denials, *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011), and will grant summary judgment only "if, under the governing law, there can be but one reasonable conclusion as to the verdict," *Anderson*, 477 U.S. at 250.

## III. DISCUSSION

This case, like a number of other recent decisions in the District of Connecticut, requires the Court to examine the provisions of an insurance policy after homeowners have discovered that the concrete supporting the walls of their house is deteriorating. *See, e.g.*, *Valls v. Allstate Ins. Co.*, No. 3:16-cv-1310 (VAB), 2017 WL 4286301 (D. Conn. Sept. 27, 2017); *Metsack v. Liberty Mut. Fire Ins. Co.*, 3:14-cv-1150 (VLB), 2017 WL 706599 (D. Conn. Feb. 21, 2017). The critical issue is whether the cracking concrete falls within a provision of the plaintiff's

homeowner's insurance policy that covers collapses. Compl., Ex. A at 17, ECF 1-1. Because the Leeses' policy covers only "sudden and accidental direct physical loss to property," Compl., Exh. A at 8, and not the gradual deterioration of property over time, this Court finds that Allstate's policy excludes coverage for the damage to the Leeses' basement, and grants Allstate's motion for summary judgment on all three counts.

### A. Breach of Contract

Under Connecticut law, "the terms of an insurance policy are to be construed according to the general rules of contract construction"; that is, the Court must discern the intent of the parties as articulated in the provisions of the policy. *Liberty Mut. Ins. Co. v. Lone Star Indus., Inc.*, 290 Conn. 767, 795 (2009). The Court reads the words of the policy with "their natural and ordinary meaning," and resolves any ambiguity in favor of the insured. *Wentland v. American Equity Ins. Co.*, 267 Conn. 592, 600-01 (2004). The Court must construe the contract language in favor of the insured unless the Court "has 'a high degree of certainty' that the policy language clearly and unambiguously excludes the claim." *Lone Star Indus.*, 290 Conn. at 796 (quoting *Kelly v. Figueiredo*, 223 Conn. 31, 37 (1992)).

"[T]he insured bears the burden of showing that an insurance coverage covers the loss, but the insurer bears the burden of showing that an exclusion applies to exempt it from covering a claim." *MBIA Inc. v. Fed. Ins. Co.*, 652 F.3d 152, 158 (2d Cir. 2011). The Court resolves any doubts in favor of the insured. *Id.* Whether a contract is unambiguous is a question of law for the Court, appropriately decided at the summary judgment stage. *Continental Ins. Co. v. Atlantic Cas. Ins. Co.*, 603 F.3d 169, 180 (2d Cir. 2010). If the Court finds that the contract is unambiguous, "the plain meaning of its terms control." *MBIA Inc.*, 652 F.3d at 158.

Allstate argues that there is no ambiguity in this contract: the policy covers only sudden and accidental direct physical loss of property, and excludes expansion or cracking of walls, defective construction materials, and collapse, other than sudden and accidental collapse that results in an entire collapse. Memo. in Support of Mot. Summ. J. at 8, ECF 40. Allstate also argues that the policy unambiguously does not cover losses caused by rust or other corrosion. *Id.* at 11.

The Leeses respond that their policy does cover losses resulting from the collapse of a building, as long as the collapse is the result of an enumerated peril. Opp. Mot. Summ. J. at 7. They argue that their cracking walls are the result of hidden decay and defective materials, both covered under the policy. *Id.* at 8-9. The Leeses admit that "there was not the kind of catastrophic 'tumbling down' or 'falling down' that one often associates with the word 'collapse,'" but argue that the walls suffered substantial impairment of their structural integrity, amounting to a "catastrophic 'falling down'" under *Beach v. Middlesex Mutual Assurance Company*, 205 Conn. 246, 252 (1987). *Id.* at 9.

Under Connecticut law, the substantial impairment of a wall's structural integrity is sometimes considered a collapse. *See Beach*, 205 Conn. at 252 ("[T]he term 'collapse' is sufficiently ambiguous to include coverage for any substantial impairment of the structural integrity of a building."); *Belz v. Peerless Ins. Co.*, 46 F. Supp. 3d 157, 163 (D. Conn. 2014) (finding that collapse provision applied where the plaintiffs had "alleged that the cracks in the basement walls are a substantial impairment to [the] walls' structural integrity"). In *Beach*, the Connecticut Supreme Court considered whether a policy that excluded coverage for damage unless the "collapse of a building . . . not otherwise excluded ensues." *Beach*, 205 Conn. at 250. The court observed that the policy, which contained no terms to qualify "collapse," did not

"unambiguously limit its liability to a 'collapse' of a sudden and catastrophic nature." *Id.* at 251-52 ("If the defendant wished to rely on a single facial meaning of the term 'collapse' as used in its policy, it had the opportunity expressly to define the term to provide for the limited usage it now claims to have intended."). The term "collapse," therefore, was, in that policy, "sufficiently ambiguous to include coverage for any substantial impairment of the structural integrity of a building." *Id.* at 252.

Here, the contract's language, unlike the language in *Beach*, includes the phrase "sudden," and not the word "ensue." This case hinges on whether "sudden and accidental," attached to "collapse," "expressly . . . define the term to provide for the limited usage." *See Beach*, 205 Conn. at 250. The Leeses acknowledge that the chemical reaction that resulted in the deterioration of the concrete was "gradual in nature," but suggest that "the gradual reaction can cause sudden events throughout the course of the deterioration"; in other words, an ongoing, gradual chemical reaction eating away at the concrete does not preclude acute, sudden "release events" that resulted in "the widespread map cracking condition." Opp. Mot. Summ. J. at 12 (citing Grandpré Testimony, Exh. FF ¶¶ 17-20). The Leeses therefore argue that a reasonable jury could find that the loss was the result of "a series of sudden events, though ultimately driven by a long-term chemical reaction." *Id.* at 13.

The Connecticut Supreme Court held in an environmental contamination case that the modifiers "sudden and accidental" in a pollution context signal "a temporal quality, which requires that the onset of the release in question occurs quickly or happens abruptly." *Buell Indus., Inc. v. Greater New York Mut. Ins. Co.*, 259 Conn. 527, 536, 540-41 (2002). Courts in this District have applied *Buell*'s reasoning in the cracking concrete context. In *Metsack*, for example, the court considered whether an insurance policy that covered "sudden and accidental

9

direct physical loss," covered cracking concrete. 2017 WL 706599, at *3. The court explained that, "[w]hile *Beach* and the numerous JJ Mottes concrete cases that have been heard in this district have held that a collapse need not be 'sudden' to be covered, none of the policies evaluated included the word 'sudden' within their 'collapse' provisions." *Id.* at *7 (declining to follow conclusion in *Kelly v. Balboa Ins. Co.*, 897 F. Supp. 2d 1262, 1268 (M.D. Fla. 2012), that "the inclusion of [the term] 'sudden' in the definition of LOSS for a policy that covers insect damage creates an ambiguous policy provision"). The court noted that the parties had both acknowledged that the basement walls deteriorated over many years, and concluded that the limiting term "sudden" unambiguously excluded coverage for long-term deterioration of concrete. *Id.* at *8.

Other decisions in this District considering similar language have found that when an insurer added "sudden and accidental"—temporal, limiting language—to the term "collapse," the phrase was unambiguous. *See Adams v. Allstate Insurance Co.*, No. 3:16-cv-1360, 2017 WL 3763837, slip op. at 5 (JBA) (D. Conn. Aug. 29, 2017) (granting Allstate's motion to dismiss claims for coverage of cracking concrete damages, which plaintiff admitted was a progressive deterioration over time, under policy that covered "sudden and accidental direct physical loss to property"); *Valls*, No. 3:16-cv-1310 (VAB) (D. Conn. Sept. 27, 2017) (granting Allstate's motion to dismiss because, under collapse provision that that provided coverage for accidental and sudden collapse, the plaintiffs alleged "progressive deterioration" and not suddenness); *Manseau v. Allstate Ins. Co.*, No. 3:16-cv-1231 (MPS), 2017 WL 3821791, at *5 (D. Conn. Aug. 31, 2017) ("[T]he term 'sudden,' used in the context of the phrase 'sudden and accidental' is unambiguous, and must be accorded a temporal quality."); *Agosti v. Merrimack Mut. Fire Ins. Co. et al.*, No. 3:16-cv-1686 (SRU) (D. Conn. Aug. 28, 2017) (noting policy contained "a

10

number of qualifiers, . . . which operate to reduce the scope of coverage" and finding that plaintiffs had not shown that their basement walls had undergone an "entire collapse"); *Clough v. Allstate Ins. Co. et al.*, No. 3:17-cv-140 (JBA) (D. Conn. Aug. 29, 2017) (finding that the plaintiffs had alleged "progressive deterioration that may in the future be punctuated with sudden breaks or collapses," but that "[w]ithout any allegation of suddenness, and with allegations that explicitly contradict the possibility that any sudden loss has already occurred, Plaintiff's claim is not plausibly covered by the plain language of the policy unless it falls under the limited exception for certain kinds of collapses"); *Metsack v. Liberty Mut. Fire Ins. Co.*, 2017 WL 706599 (D. Conn. 2017) (finding sudden collapse unambiguous); *Lajeunesse v. Allstate Ins. Co.*, 3:16-cv-937 (AVC) (D. Conn. Aug. 31, 2017) ("By any reasonable interpretation, a contract provision requiring a 'sudden' collapse in order to trigger coverage, would not include a barely perceivable chemical reaction that slowly reduces the structural integrity of concrete over a period of years."); *Carlson v. Allstate Ins. Co.*, 3:15-cv-1045 (MPS) (D. Conn. Sept. 27, 2017) ("Because the term 'sudden,' as used in the collapse coverage provision, means temporally abrupt, the Carlsons must point to evidence that the loss for which they seek coverage occurred abruptly, and not merely unexpectedly, for it to be a covered collapse."); *Carney v. Allstate Ins. Co.*, 3:16-cv-592 (VLB) (D. Conn. Feb. 14, 2017) (finding no bad faith when Allstate denied coverage for cracking concrete where the "impairment to the property is caused by a gradual chemical reaction and the property retains its structural integrity").

  This Court sees no reason to depart from the analyses in these cases, which find that a sudden and accidental loss must occur abruptly, not gradually over time. The insurance policy at issue here unambiguously covers only sudden and accidental losses, and Allstate did not breach its contract with the Leeses by denying coverage for the concrete crumbling in their basement

walls. Allstate is entitled to summary judgment on Count I as a matter of law. *See Continental Ins. Co.*, 603 F.3d at 180 (summary judgment is appropriate when a contract's terms are unambiguous). Summary judgment on Count One therefore is granted.

**B.     Breach of the Implied Covenant of Good Faith and Fair Dealing**

Allstate has also moved for summary judgment on Count II, which claims that Allstate breached the implied covenant of good faith and fair dealing. In Connecticut, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *See Warner v. Konover*, 210 Conn. 150, 154 (1989); *Central New Haven Development Corporation v. La Crepe, Inc.*, 177 Conn. 212, 217 (1979). Generally, establishing bad faith requires "both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." *Habetz v. Condon*, 224 Conn. 231, 237 (1992).

The Leeses allege that Allstate did not "conduct a proper and otherwise sufficient investigation of the insured residence following the claim for coverage of the loss." Compl. at 5. They argue that Allstate acted in bad faith because "Allstate ignored the coverage provided for collapse and denied the Lees' claim based upon other policy provisions clearly inapplicable and wholly immaterial to the Lees' claim for coverage." *Id.* The Leeses also argue that Allstate acted in bad faith by "intentionally cit[ing] portions of the policy wholly inapplicable to the Lees' claim for coverage knowing full well that the Lees, like most insureds, are unsophisticated with respect to the complex language contained in insurance policies." *Id.*

Allstate responds that this question boils down to a coverage dispute, and that the Leeses lack evidence that Allstate had any malicious intent, and therefore the claim does not support an

argument that Allstate breached the covenant of good faith and fair dealing. Mot. Summ. J. at 20 (citing *McCulloch v. Hartford life & Acc. Ins. Co.*, 363 F. Supp. 2d 169, 177 (D. Conn. 2005) ("Allegations of a mere coverage dispute or a negligent investigation by an insurer will not state a claim for bad faith . . . . Thus, a plaintiff cannot recover for bad faith if the insurer denies a claim that is 'fairly debatable,' i.e., if the insurer had some arguably justifiable reason for refusing to pay or terminating the claim.")). The Court agrees.

Denying coverage in itself does not constitute bad faith where the insured's right to coverage is disputed. *American National Fire Ins. Co. v. Kenealy*, 72 F.3d 264, 271 ("[I]t is not bad faith for an insurer to fight liability when policy coverage is unclear."); *Ingersoll*, 829 F.2d at 309-10. In light of other decisions in this District dismissing the underlying contract claim, even if the Court had determined that whether the Leeses' home endured a sudden catastrophic event or an ongoing, gradual deterioration (or both) was a disputed question, it was not unreasonable and does not imply fraud or a design to mislead the Leeses for Allstate to conclude that the Leeses lacked coverage for their claim. Indeed, the issue would have been "fairly debatable." *See McCulloch*, 363 F. Supp. 2d at 177. Summary judgment on this Count therefore is granted.

### C. Violation of CUIPA/CUTPA

The Leeses also claim that Allstate engaged in an unfair business practice in violation of CUIPA and CUTPA. The Leeses allege that Allstate knew of many crumbling concrete claims in Connecticut and participated in an "industry wide practice of denying coverage for concrete decay claims," even for those claims that reasonably should have been covered. Compl. 8.

Allstate responds that it had a good faith basis for denying coverage and therefore cannot be in violation of CUIPA and CUTPA. Mot. Summ. J. at 22. Allstate argues that, even if this

Court concludes that there are disputed facts over whether the Lees's claim should have been covered, the analysis was "fairly debatable," and Allstate's liability was not "reasonably clear." *Id.* at 23. Allstate further argues that the Lees "have not cited to any other claims or cases to support their bald assertion that Allstate has engaged in [a] general business practice of wrongful denials, and have therefore failed to establish that Allstate does not fairly settle claims 'in which liability has become reasonably clear,' in violation of CUIPA." Mot. for Summ. J. at 25.

Under the CUIPA, the Leeses would need to show that Allstate engaged in "unfair settlement practices" with "sufficient frequency to indicate a general business practice." Conn. Gen. Stat. 38a-816(6); *Conn. Gen. Stat.* § 42-110a, *et seq.*; *Belz*, 204 F. Supp. 3d 457 (D. Conn. 2016) (denying insurance company's motion for summary judgment on CUIPA claim because the plaintiffs cited three other matters where insurance company unfairly settled disputes with similar facts, and insurance the company did not provide evidence to contradict the plaintiffs' claim); *Metsack*, 2017 WL 706599, at *9 (finding a genuine issue of material fact as to whether the insurance company engaged in unfair business practice because "[i]n addition to offering evidence that Liberty Mutual did not sufficiently investigate their claim, Plaintiffs have offered evidence that Liberty Mutual and its affiliates have been involved in 19 separate lawsuits (including the instant case) involving the denial of claims arising from defective JJ Mottes concrete").

The Leeses cite ten cases in their opposition to Defendant's motion to dismiss that deal with similar issues. Opp. Mot. Summ. J. at 28. But, when the insurer's decision on whether to cover a claim is "fairly debatable," the plaintiff does not have a claim under CUTPA and CUIPA. *McCulloch*, 363 F. Supp. 2d at 177. Defendant's motion for summary judgment on this Count therefore is granted.

## IV. CONCLUSION

For all of the foregoing reasons, Defendant's motion for summary judgment is **GRANTED**.

SO ORDERED at Bridgeport, Connecticut, this 30th day of November, 2017.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE